**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KHALEN T., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-8487 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Khalen T.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying him disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 15] is GRANTED and Defendant's motion for summary judgment [Dkt. 18] is DENIED. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### 1. Procedural History

On January 6, 2022, Plaintiff filed an application for child's insurance benefits based on disability. [Administrative Record ("R.") 15.] On July 20, 2022, Plaintiff filed an application for supplemental security income. *Id*. Plaintiff alleged his disability began January 3, 2004, in both applications. *Id*. The claim was denied initially and on reconsideration. *Id*. On July 16, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] Plaintiff has filed an "Opening Brief" [Dkt. 15], which the Court construes as a motion for summary judgment. Defendant filed a "Response to Plaintiff's Motion for Summary Judgement" [Dkt. 18], which the Court treats as a cross motion for summary judgement.

disabled. [R. 15-30.] The Appeals Council denied review on May 21, 2025 [R. 1], rendering the ALJ's July 16, 2024 decision the final decision of the Commissioner. 20 C.F.R. §404.981. On July 23, 2025, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

**2. The ALJ's Decision**

In her decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 125-140.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 3, 2004, the alleged onset date. [R. 17.] At Step Two, the ALJ found Plaintiff had the severe impairments of mild intellectual disability and depression. *Id*. At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [R. 18.] In determining Plaintiff's mental impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff had (i) a moderate limitation in understanding, remembering or applying information, (ii) a moderate limitation in interacting with others, (iii) a mild limitation in concentrating, persisting or maintaining pace, and (iv) a moderate limitation in adapting or managing oneself. [R. 19-20.] The ALJ also determined the evidence of record failed to establish the presence of Paragraph C criteria. [R. 20.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: never climb ladders, ropes, or scaffolds; never work at unprotected heights; occasionally work with moving mechanical parts; never operate a motor vehicle; understand, remember, and carryout simple, routine tasks; frequently interact with supervisors; occasionally interact with coworkers and the

public; and no hourly production quotas. [R. 21.]

At Step Four, the ALJ concluded Plaintiff had no past relevant work. [R. 27.] At Step Five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 28.] Specifically, the ALJ determined Plaintiff would be able to perform the requirements of representative occupations such as sexton (DOT# 389.667-010, medium, SVP 2), floor waxer (DOT# 381.687-034, medium, SVP 2), and cleaner industrial (DOT# 381-687-018, medium, SVP 2). *Id*. Accordingly, the ALJ found Plaintiff was not disabled from the alleged onset date through the date of the decision. [R. 29.]

**3. Social Security Regulations and Standard of Review**

The court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). "This is not a high threshold; it requires only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (cleaned up) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)). While reviewing a Commissioner's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion, which is satisfied by an "adequate[] discuss[ion of] the issues and evidence involved in the claim." *Hess*, 92 F.4th at 676; *Lincoln v. Bisignano*, No. 24-cv-2668, 2026 WL 1097737, at *2 (7th Cir. 2026); *Dunn v. Saul*, 794 F. App'x 519, 522 (7th Cir. 2019).

**4. Discussion**

Plaintiff contends the ALJ erred by failing to properly address (a) Plaintiff's intellectual disorder at Step Three and (b) the medical opinion evidence in line with the requirements of 20 C.F.R. § 404.1520c(b)(2). The Court agrees on both accounts.

**a. The ALJ's Step Three Analysis is Not Supported by Substantial Evidence**

In order to show Plaintiff met the "paragraph B" criteria for mental listings, Plaintiff had to prove at least one extreme or two marked limitations in the four functional domains. For Listing 12.05(B) specifically, Plaintiff had to further prove he met the requisite intelligence testing scores along with the deficits in adaptive functioning. As discussed above, at Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [R. 18.] The ALJ further found Plaintiff had only a mild limitation in one of the four areas of mental functioning, and only a moderate limitation in the remaining three areas of mental functioning. [R. 19-20.] Plaintiff alleges the ALJ erred by failing to properly address Plaintiff's intellectual disorder and by only finding a moderate limitation in understanding, remembering or applying information and a mild[3] limitation in concentrating, persisting or maintaining pace. The Court agrees with Plaintiff and finds the ALJ failed to support her conclusions with substantial evidence and failed to build a logical and accurate bridge between the evidence and her conclusions. *Hess*, 92 F.4th at 676.

---

[3] Plaintiff's brief argues against the ALJ's "rationales for the *moderate* limitations in the B criteria of 'understanding, remember or applying information' and 'maintaining concentration, persistence or pace.'" [Dkt. 15 at 8 (emphasis added).] The Court notes the ALJ concluded Plaintiff had a mild (not a moderate) limitation in concentrating, persisting or maintaining pace. [R. 19-20.]

Plaintiff first claims the ALJ erred in addressing Plaintiff's intellectual disability by misidentifying an abbreviated screening test and disregarding a more recent, probative adult evaluation of Plaintiff's IQ. [Dkt. 15 at 7-8.] In finding Plaintiff did not meet the requirements of Listing 12.05 (Intellectual Disorders), the ALJ noted that "even though the claimant had the full scale IQ score of 63, other testing showed a full scale IQ score of 79[.]" [R. 21 (internal citations omitted).] The ALJ's more detailed discussion of the two exams later in the decision clearly indicates the ALJ was aware Plaintiff's IQ in February 2018,[4] when Plaintiff was only14 years old, was 79 and Plaintiff's IQ four years later in April 2022, when Plaintiff was 18 years old, was 63. [R. 22.] The Social Security Administration recognizes "IQ scores tend to stabilize by the age of 16." *DI 24515.020 Curtailing Development of Fully Favorable Claims*, https://secure.ssa.gov/poms.nsf/lnx/0424515020 (last visited Sept. 30, 2026). Yet, during the ALJ's Step Three analysis (and even throughout the rest of the decision), the ALJ failed to explain how the ALJ evaluated these IQ scores, how the ALJ weighed the evidence that Plaintiff's IQ dropped 16 points during the four years between the two exams, or how the ALJ considered the fact that Plaintiff's IQ, after he turned 18 years old, was approximately 2.5 standard deviations below the mean IQ and equivalent to that of a third grader. *A.H. ex rel. Williams v. Astrue*, No. 09-cv-6981, 2011 WL 1935830, at *10 (N.D. Ill. May 18, 2011) ("The Commissioner responds by pointing out that under Appendix 1, the regulations consider IQ scores to have a mean value of 100, with a standard deviation of 15."); Rosa Ehrenreich & Jamie Fellner, *Beyond Reason: The Death Penalty and Offenders with Mental Retardation*, 13 HUM. RTS. WATCH 1 (2001), https://www.hrw.org/reports/2001/ustat/ustat0301-01.htm#P224_29151 ("An I.Q. in the 60 to 70 range is approximately the scholastic equivalent to the third grade."). The ALJ attempted to

[4] Plaintiff contends the ALJ misidentifies the February 2018 test as a WAIS-II exam. [Dkt. 15 at 7.] However, the Court's review of this document does indicate a WAIS-II exam was completed in February 2018. [R. 354.]

support her conclusion by noting Plaintiff had "many mental status exams showing no deficits" [R. 21, *citing* Exs. 8F, 9F, and 12F]. However, the Court's review of the same exhibits indicates these records endorse Plaintiff's "developmental delay with Autism, Anxiety, Dyslexia, and intellectual disability" [Ex. 8F; R. 460] and merely indicate Plaintiff was "alert and oriented to person, place, time, and situation" [Ex. 9F; R. 469 and Ex. 12F; R. 489]. The Court fails to follow the ALJ's logic in how an adult individual who has documented intellectual disabilities and an IQ equivalent to that of a third grader does not have significant deficits in adaptive functioning simply because their orientation as to person, place, and time was relatively intact. The Court acknowledges that "an IQ between 60 and 70 'is insufficient, even with the presence of some impairment, to establish disability per se on grounds of mental retardation'" as individuals "with an IQ in the 60s (or even lower) may still be able to hold a full-time job." *Smith v. Colvin*, 9 F.Supp.3d 875, 883 (E.D. Wis. Mar. 26, 2014) (*quoting Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007); *Mendez v. Barnhard*, 439 F.3d 360, 361 (7th Cir. 2006)). While this ultimately might be the case here, the ALJ must nevertheless build a logical and accurate bridge, supported by substantial evidence, between the evidence and her conclusion concerning Plaintiff's intellectual disabilities, and the ALJ failed to do so.

Next, Plaintiff questions the ALJ's stated rationales in making her Paragraph B findings. In finding Plaintiff has no more than a moderate limitation in understanding, remembering or applying information and no more than only a mild limitation in his ability to concentrate, persist, or maintain pace, the ALJ heavily relied on a function report which detailed the Plaintiff's activities of daily living. [R. 19-20, *citing* R. 276-283.] Specifically, the ALJ noted "the abilities to play video games, handle dressing and bathing and caring for his hair and shaving and feeding himself and using the toilet all without any problems, clean, do laundry, shop in stores for shoes and groceries and games, and use a phone" as suggestive of Plaintiff's abilities to understand,

remember, or apply information and concentrate, persist, and maintain pace. *Id*. Importantly, this function report was completed by Plaintiff himself. [R. 283.] Recognizing Plaintiff's low IQ and documented intellectual disabilities, the Court is troubled by the ALJ's reliance on this self-completed function report as indicative of Plaintiff's abilities. The ALJ's reliance on this report is particularly concerning as Plaintiff's mother also completed a third-party function report and indicated Plaintiff needs "constant reminders" to take his medicine, do his daily grooming, and do his chores, that she does not feel comfortable with him using a stove, and that he "has to be told several times to finish things." [Ex. 4E]. Plaintiff also testified that his mother has to tell him to do things as simple as showering. [R. 49.] The ALJ does not address this contrary evidence. "Although an ALJ need not mention every snippet of evidence in the record…[they] may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *see also Rodney S. v. Kijakazi*, No. 20-cv-1230, 2021 WL 3418858, at *12 (N.D. Ill. Aug. 5, 2021) (awarding benefits in a case where, *inter alia*, plaintiff had a 62 IQ and claimant's mother had to give him similar reminders regarding personal grooming, daily tasks, cooking safety, cleaning, etc, just like Plaintiff in the instant matter). Here, the ALJ failed to engage with evidence that undermines her conclusions.

Similarly, the ALJ relied on Plaintiff's self-reports from his consultative exam where he reported he graduated from high school and did his college homework. [R. 19-20, *citing* Ex. 5F.] The ALJ's discussion of Plaintiff's educational history while discussing Plaintiff's functional limitations at Step Three failed to address Plaintiff's special needs accommodations in high school, Plaintiff's Individualized Education Program ("IEP"), that Plaintiff was approved for disability services at college, including distraction free environments, additional time for tests, and alternative textbooks, or that Plaintiff ultimately received failing grades in college, lost his financial aid, and stopped attending college. [R. 22-23.] While true that an ALJ may more

thoroughly analyze the evidence at a later step in the sequential analysis and elaborate on the cursory discussion at Step Three, *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) ("the sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically."), and the ALJ did discuss some of the above mentioned educational accommodations later in her decision, the ALJ's later discussions on these topics (which merely reiterate Plaintiff's educational history) do nothing to help the Court understand how the ALJ formed her conclusions. The Court fails to follow the ALJ's logic of how someone who failed out of college, even with accommodations, would be able to sustain full-time employment without at least the same or greater accommodations.

Lastly, the Court is troubled by the ALJ's repeated reliance on Plaintiff's ability to play video games. As Plaintiff argues, his ability to play video games for extended periods "bears no resemblance to the sustained concentration, persistence, and pace required in a competitive workplace." [Dkt. 15 at 10-11.] Plaintiff asks the Court to draw parallels and rely on the reasoning from *Taylor v. Colvin*, 829 F.3d 799, 801 (7th Cir. 2016) in finding the ALJ erred here. [Dkt. 15 at 11.] In *Taylor*, the ALJ found that Taylor was capable of performing "routine, unskilled work at a fourth or fifth grade level," relying heavily on Taylor's ability to play video games and her activities of daily living, including her weekly visits to the library. *Taylor*, 829 F.3d at 801-802. However, the record also indicated that while Taylor could play video games, she could not "drive or handle her own money; doesn't shop or cook without her mother; and sometimes requires help showering, fixing her hair, and remembering to take her medications. She doesn't know her own weight, or know how to text" and she stated she did not think she would ever be able to live on her own. *Id*. The Seventh Circuit expressed doubt "that playing video games requires the same level of concentration as working full time" and ultimately found the ALJ's conclusion was unfounded and admonished the ALJ stating, "one doesn't need child-labor laws (though we have them) to

realize that an adult with no greater capability for full-time work than a fourth- or fifth-grader is incapable of full-time gainful employment." *Id*. Similarly, here, Plaintiff has a very low IQ of 63, reported intellectual disabilities, requires assistance and reminders for basic tasks such as daily grooming, and despite living alone at college for a period of time, Plaintiff now resides with his mother.[5] The Court does not follow the ALJ's logic of how Plaintiff's abilities to play video games supports a finding of moderate and mild functional limitations and ultimately, supports a finding that Plaintiff is capable of full-time gainful employment.

Because the ALJ failed to build a logical and accurate bridge with several pieces of evidence, the Court cannot find the errors here harmless as the Court cannot predict with great confidence what the result of a remand would be if the ALJ appropriately engaged with all of the evidence of record. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("In assessing whether an error is harmless, we examine the record to determine whether we can 'predict with great confidence what the result of the remand will be.'") (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). Accordingly, the Court must remand for a more thorough evaluation of the record.

**b. The ALJ Erred in Evaluating the Medical Opinion Evidence**

In evaluating a medical opinion, an ALJ is required to articulate how persuasive they found the medical opinion and evaluate the supportability and consistency (among other factors) of the opinion with the record. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source" to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the consistency of a "medical opinion(s)…with the evidence from other medical sources and nonmedical sources in the

---

5 The ALJ notes that Plaintiff's "residence with his mother after college appears more of out monetary necessity" but cites no evidence in the record to support this claim.

claim." 20 C.F.R. § 404.1520c(c)(2). Though the ALJ addressed the supportability and consistency factors for some medical opinions, the ALJ failed to adequately address the supportability and consistency factors for State Agency psychological consultants, Dr. Donna Galassi-Hudspeth and Dr. Russell Taylor's opinions, and psychological consultant Dr. Jerry Boyd's opinion. The Seventh Circuit considers this omission to be "clear legal error." *Liapis v. Bisignano*, 180 F.4th 946, 952 (7th Cir. 2026). Plaintiff also raises concerns with the ALJ's evaluation of neuropsychological evaluator Dr. Michelle Delehant's opinion. However, Dr. Delehant did not provide an opinion regarding Plaintiff's abilities despite any identified impairments and therefore her opinion did not meet the regulatory definition of a medical opinion. 20 C.F.R. § 404.1513(a)(2). Accordingly, the Court does not address this argument.

The State Agency psychological consultants, Dr. Galassi-Hudspeth and Dr. Taylor, opined that Plaintiff

> can understand, remember and perform simple and routine work tasks; can maintain concentration and persistence to carry out simple, repetitive, rote and routine tasks and exercise judgment commensurate with this level of task; can maintain work attendance and following a work routine with normal supervision; can relate for vocational purposes in the work setting to a supervisor and a limited number of fellow employees; "should not" be required to deal with the public; can deal with the changes involved in simple and routine work tasks; can follow work guidelines and make work decisions commensurate with the level of task; and can negotiate to get to work environments.

[R. 26.] The ALJ found these opinions somewhat persuasive, as the ALJ found the record to support Plaintiff having non-exertional limitations. [*Id.*] The ALJ explained, however, that the opinions prohibiting Plaintiff from public contact were inconsistent with the record as a whole because Plaintiff reported going grocery shopping, playing video games with friends, and getting along with classmates and teachers. [*Id.*] The ALJ's explanation as to the consistency factor meets

the minimal articulation standard.[6] *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning".). However, the ALJ failed to adequately address the supportability, or lack thereof, of the opinions, merely stating that certain language from the opinions is "vague and unhelpful in determining a residual functional capacity." [R. 26.] It is unclear to the Court whether the ALJ found all parts of the opinions to be vague and unhelpful and if any portion of these opinions were, in fact, supported by objective medical evidence and any supporting explanations.

Similarly, Plaintiff raises concerns with the ALJ's evaluation of Dr. Boyd's opinion. Dr. Boyd opined Plaintiff can "understand and follow repeated, simple instructions; can follow moderately complex instructions, if they can be repeated, perhaps more than once; has 'trouble' focusing/concentrating due to him having slowed mentation and being distracted at times; 'seems to be socially awkward and uncomfortable'; and 'would be challenged' to meet production demands[.]" [R. 26.] The ALJ found Dr. Boyd's opinion to be somewhat persuasive, finding the record supports Plaintiff "being able to engage in simple work with no production requirements without the need for 'repeated' instructions." *Id*. However, the ALJ does not cite what parts of the record are consistent with this finding that Plaintiff does not need repeated instructions. In the same vein, the ALJ does not explain how this finding is supported or unsupported by Dr. Boyd's objective medical findings and/or Dr. Boyd's supporting explanations. The Court is left to guess

[6] While the Court finds that the ALJ did meet the minimum articulation standard in addressing the consistency factor in evaluating the State Agency psychological consultants' opinions, the Court reemphasizes the issues that it flagged with the evidence cited in support of the consistency factor as discussed in Section 4(a) of this Memorandum Opinion and Order.

whether the ALJ's comment that Plaintiff "had an intact fund of knowledge, and his remote memory was intact" [R. 26] is the evidence the ALJ relied on in making her finding. Further, the Court's review of Dr. Boyd's opinion shows that Dr. Boyd observed Plaintiff's attention, concentration, and short-term memory were mildly impaired. [R. 416.] It is not clear how the ALJ weighed this part of Dr. Boyd's opinion or why she found this did not support Dr. Boyd's conclusion that Plaintiff requires repeated instructions. Ultimately, the ALJ's decision falls victim to the same complaint she has of the medical consultants – the ALJ's findings are vague and leave the Court to guess which parts of the record the ALJ thinks are consistent with Dr. Boyd's decision and which parts of Dr. Boyd's opinions are supported and which parts are not.

While the Seventh Circuit has found an ALJ's omission of the supportability and consistency factors in evaluating the persuasiveness of a medical opinion to be clear legal error, the Seventh Circuit finds such an error to be harmless where the Court is convinced the ALJ would ultimately reach the same result. *Liapis*, 180 F.4th at 953 (finding the ALJ's error in omitting discussion of the supportability and consistency factors, among other errors, to be harmless where the Court was convinced the ALJ would ultimately reach the same result). Here, the Court cannot find the ALJ's errors to be harmless as the Court cannot determine which parts of the ALJ's decision and ultimate RFC, if any, would require changes if the ALJ properly articulated the consistency and supportability of each of the medical opinions. Accordingly, the Court must remand for the ALJ to conduct the necessary consistency and supportability analysis as required under 20 C.F.R. § 404.1520c(b)(2).

## CONCLUSION

For the foregoing reasons, the Court must remand this matter for proceedings consistent with this Memorandum Opinion and Order. Plaintiff's motion for summary judgment [Dkt. 15] is GRANTED and Defendant's motion for summary judgment [Dkt. 18] is DENIED.

**ENTERED: September 30, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge